No. 22-14074

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

—————————

**UNITED STATES OF AMERICA**,
*Plaintiff—Appellee,*

*v.*

**JULIE CHRISLEY,**
*Defendant—Appellant.*

—————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
THE HONORABLE ELEANOR L. ROSS, DISTRICT JUDGE
CASE NO. 1:19-cr-00297-ELR-JSA

—————————

## APPELLANT JULIE CHRISLEY'S OPENING BRIEF

—————————

J. ALEX LITTLE
ZACK C. LAWSON
BURR & FORMAN LLP
222 2nd Ave S, Suite 2000
Nashville, Tennessee 37201
(615) 724-3203
alex.little@burr.com

CHRISTOPHER S. ANULEWICZ
BALCH & BINGHAM LLP
30 Ivan Allen, Jr. Blvd NW # 700
Atlanta, Georgia 30308

*Counsel for Defendant-Appellant*

March 29, 2023

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1-2(a), the following people and entities

have an interest in the outcome of this appeal:

| | |
|---|---|
| Anand, Honorable Justin S. | Regions Bank (RF) |
| Anulewicz, Christopher S. | RES-GA (Integrity/Haven) |
| Buchanan, Ryan K. | Ross, Eleanor L. |
| Candence Bank (BCB) (CADE) | Samuel, Donald F. |
| Chrisley, Julie | Security Bank (SECB) |
| Chrisley, M. Todd | Sistla, Alex R. |
| Clarkson, John T. | Sneed, Sekret T. |
| Erskine, Kurt R. | Sommerfeld, Lawrence R. |
| Georgia Department of Revenue | SouthState (Midtown) (SSB) |
| Griffin, Daniel P. | Sponseller, Alex F. |
| Jacobs, Julie A. | Stearns Bank (ABT) (SFSI) |
| Jones, Vivieon K. | Synovus, Bank (AFBT) (SNV) |
| Krepp, Thomas J. | Tarantino, Peter |
| Lawson, Zachary C. | Thompson, Brenton |
| Leach, Arthur W. | Truist (Haven) (TFC) |
| Little, J. Alex | United Community Bank (UCBI) |
| Morris, Bruce H. | United States of America |
| Pak, Byung J. | Vey, Alexander C. |
| Peters, Annalise K. | Why, John J. V. |
| Ramey, E. Travis | Wilson, Laurabeth |

i

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument under Federal Rule of Appellate Procedure 34(a).

Because this case involves complex legal and factual issues, including those that arose after trial, the Appellant believes that oral argument will assist the Court in deciding this appeal.

# TABLE OF CONTENTS

Page(s)

CERTIFICATE OF INTERESTED PERSONS AND
    CORPORATE DISCLOSURE STATEMENT ................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................. ii

TABLE OF CONTENTS ............................................................... iii

TABLE OF AUTHORITIES ............................................................ v

STATEMENT REGARDING ADOPTION OF BRIEFS
    OF OTHER PARTIES ................................................................. 1

STATEMENT OF JURISDICTION .................................................... 2

STATEMENT OF THE ISSUES .................................................... 3

STATEMENT OF THE CASE ........................................................ 4

    A. Nature of the Case ...................................................... 4

    B. Course of Proceedings ................................................. 4

    C. Statement of Facts ...................................................... 6

        1. The Bank Fraud Charges ...................................... 7

        2. The Government's Bank Fraud Case at Trial ....................... 8

        3. Sentencing and Forfeiture .................................... 15

    D. Standard of Review ................................................... 17

    E. Defendant's Bail Status ............................................. 18

SUMMARY OF THE ARGUMENT ................................................. 19

# TABLE OF CONTENTS
## cont.

<u>Page(s)</u>

ARGUMENT .......................................................... 22

   I.  THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO CONVICT ON BANK FRAUD ................................................... 22

      A.   The Government Failed to Prove that Julie Committed the Bank Fraud in Counts 2 to 6 ............. 22

      B.   The Government Failed to Prove a Material Misrepresentation for Counts 3, 5, and 6 ................... 25

   II.  THE COURT ERRED AT SENTENCING BY REFUSING TO MAKE FINDINGS ABOUT JULIE'S INDIVIDUAL ROLE IN THE BANK FRAUD CONSPIRACY ....................... 32

   III.  THE COURT ERRED AT SENTENCING BY FAILING TO EXPLAIN ITS REASONS FOR IMPOSING LARGE AMOUNTS OF RESTITUTION AND FORFEITURE ............ 35

CONCLUSION ....................................................... 37

CERTIFICATE OF COMPLIANCE ....................................... 38

CERTIFICATE OF SERVICE .............................................. 39

# TABLE OF AUTHORITIES

<u>CASES</u> <span style="float:right"><u>Page No.</u></span>

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) ......................................................................... 27

*Blount Fin. Servs. v. Walter E. Heller & Co.,*
    819 F.2d 151 (6th Cir. 1987) ........................................................ 28

*Glasser v. United States,*
    315 U.S. 60 (1942) ......................................................................... 22

*Kungys v. United States,*
    485 U.S. 759 (1988) ....................................................................... 26

*Neder v. United States,*
    527 U.S. 1 (1999) ..................................................................... 34-35

*Pinkerton v. United States,*
    328 U.S. 640 (1946) ................................................................. 23-24

*United States v. Dennis,*
    237 F.3d 1295 (11th Cir. 2001) ..................................................... 23

*United States v. Duenas,*
    891 F.3d 1330 (11th Cir. 2018) ......................................... 17, 22, 25

*United States v. Greene,*
    842 F. App'x 364 (11th Cir. 2021) ............................................ 29-30

*United States v. Gaudin,*
    515 U.S. 506 (1993) ....................................................................... 26

*United States v. Gupta,*
    572 F.3d 878 (11th Cir.2009) ........................................................ 35

*United States v. Hassan,*
    333 F.3d 1264 (11th Cir. 2003) ................................................. 27-28

*United States v. Huff,*
    609 F.3d 1240 (11th Cir. 2010) ..................................................... 35

# TABLE OF AUTHORITIES
## cont.

<u>CASES</u> <u>Page No.</u>

*United States v. Hunter,*
    323 F.3d 1314 (11th Cir. 2003) ........................................... 18, 33-34

*United States v. Lindsey,*
    850 F.3d 1009 (9th Cir. 2017) ......................................................... 29

*United States v. Liss,*
    265 F.3d 1220 (11th Cir.2001) ....................................................... 36

*United States v. Maxwell,*
    579 F.3d 1282 (11th Cir. 2009) ...................................................... 26

*United States v. McAlpine,*
    32 F.3d 484 (10th Cir.1994) ..................................................... 35-36

*United States v. Parker,*
    839 F.2d 1473 (11th Cir. 1988) ..................................................... 28

*United States v. Perez-Ceballos,*
    907 F.3d 863 (5th Cir. 2018) ..................................................... 28-30

*United States v. Prieto,*
    812 F.3d 6 (1st Cir. 2016)............................................................... 28

*United States v. Puche,*
    350 F.3d 1137 (11th Cir. 2003) ..................................................... 18

*United States v. Raza,*
    876 F.3d 604 (4th Cir. 2017) ......................................................... 29

*United States v. Rigas,*
    490 F.3d 208 (2d Cir. 2007)........................................................... 31

*United States v. Robertson,*
    493 F.3d 1322 (11th Cir. 2007) ..................................................... 18

*United States v. Studley,*
    47 F.3d 569 (2d Cir. 1995)............................................................. 34

*United States v. Svete,*
    556 F.3d 1157 (11th Cir. 2009) ..................................................... 27

# TABLE OF AUTHORITIES
## cont.

<u>CASES</u>                                                    <u>Page No.</u>

*United States v. Tilton,*
    610 F.2d 302 (5th Cir. 1980) ........................................................... 22

*United States v. Vernon,*
    593 Fed. Appx. 883 (11th Cir. 2014)............................................... 28

*United States v. Ward,*
    197 F.3d 1076 (11th Cir. 1999) ...................................................... 22

*Universal Health Servs, Inc. v. United States,*
    579 U.S. 176 (2016) ........................................................................ 31

*Williams v. United States,*
    458 U.S. 279 (1982) ........................................................................ 27


<u>FEDERAL STATUTES</u>

18 U.S.C. § 1344(2) .............................................................................. 22-23

18 U.S.C. § 1349 ....................................................................................... 7

18 U.S.C. § 3231 ....................................................................................... 2

18 U.S.C. § 3742 ....................................................................................... 2

28 U.S.C. § 1291 ....................................................................................... 2


<u>FEDERAL REGULATIONS AND RULES</u>

U.S.S.G. § 1B1.3, cmt. (n. 1)................................................................... 32

U.S.S.G. § 1B1.3, cmt. (n. 2)................................................................ 33-34

## STATEMENT REGARDING ADOPTION OF BRIEFS
## OF OTHER PARTIES

Julie Chrisley specifically adopts by reference—and requests that this Court treat as her own—the following arguments, legal citations, and factual references made in the Opening Brief filed by her husband, Todd Chrisley, related to the following issues he raised:

1. Whether the district court abused its discretion when it refused to hold a hearing on the Defendants' *Giglio* claims—specifically that the prosecutors knowingly presented and failed to correct false testimony from IRS Revenue Officer Betty Carter, who lied about the Defendants owing taxes for years when she knew no taxes were due;

2. Whether the Defendants' Fourth Amendment rights were violated when the district court admitted volumes of excluded evidence at trial without requiring the government to prove it obtained the evidence through a source independent of its unlawful search; and

3. Whether the government offered sufficient evidence at trial to convict for tax evasion and conspiracy (Counts 8 and 9) when it proved only that the Defendant lawfully received his acting income through a loan-out company, which is standard in the industry and did not alter or conceal his tax liability in any way.

1

## STATEMENT OF JURISDICTION

The district court had original jurisdiction over this criminal prosecution under 18 U.S.C. § 3231, and it entered judgments against the appellant on December 5, 2022. (Doc. 338.)

Julie Chrisley filed a timely notice of appeal on December 5, 2022. (Doc. 340.)

This Court's appellate jurisdiction arises from 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

Defendant raises the following issues on appeal:

1.    Whether the government offered sufficient evidence at trial to convict the Defendant on the substantive bank fraud counts, when it failed to offer any evidence that (i) she had joined the conspiracy in 2009 and 2010 when the charged fraud counts occurred, or (ii) that three of the banks actually received any false information or found such information to be material to a loan or credit application, when no testimony or exhibits were offered from anyone associated with those banks;

2.    Whether the district court erred at sentencing when it calculated the Sentencing Guidelines and held the Defendant accountable for the loss amount of the entire conspiracy without making any particularized findings about when she joined the conspiracy or the scope of the conspiracy that she joined; and

3.    Whether the district court committed procedural error at sentencing when it ordered restitution and forfeiture without providing the reasons for rejecting the Defendant's arguments and without an opportunity for the Defendant to be heard.

# STATEMENT OF THE CASE

## A. Nature of the Case

This is a criminal case involving allegations of bank fraud and tax evasion against reality television personalities Todd and Julie Chrisley.[1] Julie Chrisley appeals her convictions based on significant trial and post-trial errors, which she incorporates from her husband's brief, as well as insufficient evidence of the substantive bank fraud counts. She also appeals her sentence due to procedural errors.

## B. Course of Proceedings

On August 13, 2019, a federal grand jury indicted Todd and Julie Chrisley for bank fraud, wire fraud, tax evasion, and various counts of conspiracy. (Doc. 1.) The indictment also charged their accountant, Peter Tarantino, with tax crimes. (*Id.*) Two and a half years later, on February 15, 2022, the grand jury issued a superseding indictment. (Doc. 130.) The new indictment charged Julie with one separate count of obstruction of justice. (*Id.*)

---

[1]    Because multiple members of the Chrisley family are mentioned, this brief sometimes will refer only to an individual's first name for the purposes of clarity and brevity.

Prior to trial, the Chrisleys filed two motions to suppress evidence. (Docs. 36, 41, 52.) Following an evidentiary hearing, (Docs. 86-87), the Magistrate Judge recommended that the district court deny one, (Doc. 105), but grant the other, (Doc. 107). The government did not object to these recommendations, and the district court adopted them in their entirety. (Doc. 127.)

Prior to trial, after a dispute between the parties about the scope of the trial court's suppression order, the Chrisleys filed a motion to require the government to establish the admissibility of any evidence previously suppressed by the prior motions before their introduction at trial. (Doc. 162.) The district court denied the motion in a brief paragraph of a longer order. (Doc. 183.)

Trial began on May 16, 2022, and ended on June 7, 2022. (Doc. 208; Doc. 229.) At the close of trial, the jury found Julie Chrisley guilty on all counts. (Doc. 228.)

Following the jury's verdict, the Chrisleys filed a joint motion for a new trial, (Doc. 258), and judgments of acquittal, (Doc. 260.) The trial court summarily denied the motions without explanation, promising to do so later. (Doc. 300 at 2.)

Shortly after the district court denied their motions, the Chrisleys moved for reconsideration, identifying new evidence of their claims that they received three days after the court ruled. (Doc. 304.) The district court took no action on the motion—nor provided its reasons for denying the other post-trial motions—before this appeal began.

On November 21, 2022, the trial court sentenced Julie to 84 months of imprisonment and three years of supervised release, entering its judgment on December 5, 2022. (Doc. 338.) The judgment included an order of restitution in the amount of $17,270,741.57. (*Id.*) The Court subsequently entered an order requiring the Defendants to forfeit to the United States the sum of $17,270,741.57. (Doc. 347.)

That same day, Julie timely filed her notice of appeal. (Doc. 340.) The trial court later issued an order stating its reasons for denying the Chrisleys' post-trial motions. (Doc. 389.)

### C. Statement of Facts

In the superseding indictment, Todd and Julie Chrisley were charged with tax evasion and bank fraud, and Julie Chrisley also was charged with wire fraud and obstruction of justice. (Doc. 130.)

Because this brief challenges only the bank fraud convictions and certain sentencing determinations, this section will focus only on the evidence relevant to those issues.

### 1. The Bank Fraud Charges

Count 1 charged Todd and Julie Chrisley with conspiracy to commit bank fraud under 18 U.S.C. § 1349. (Doc. 130 at 5.) The government alleged that the Chrisleys conspired with "Co-conspirator A," who was Todd's former business partner named Mark Braddock, to defraud "multiple financial institutions" from about 2007 to 2012 (*Id*.) The indictment specifically alleged that the co-conspirators "submitted false documents to banks when applying for loans, including fabricated bank statements listing inflated account balances, personal financial statements containing false information about available funds, false invoices, and false audit paperwork." (*Id*. at 5-6.)

The indictment provided multiple examples of Todd and Braddock allegedly sending false documents to banks. (*Id*. at 6-7.) It referenced only one example of Julie taking part in sending false information to a bank, which did not allegedly happen until 2012—the last year of the alleged conspiracy. (*Id*. at 8.)

Counts 2 through 6 charge substantive counts of bank fraud. (*Id.* at 9.) The counts correspond to five specific instances of the co-conspirators allegedly sending a false document to a bank. (*Id.* at 10.) These acts allegedly occurred in 2009 and 2010. (*Id.*)

## 2. The Government's Bank Fraud Case at Trial

The government first presented its evidence related to the tax charges before shifting its focus to the bank fraud charges. For two of the five substantive bank fraud counts—Counts 2 and 4—the government had a bank employee testify about their dealings with Todd and Braddock.

### *Robert Stanley Kryder*

The first such witness was Robert Kryder. Mr. Kryder was the Chief Executive Officer of Midtown Bank, (Doc. 279 at 222), the bank referenced in Count 2, (Doc. 130 at 10). The bank had loaned Todd around three to four million dollars in the relevant time period. (Doc. 279 at 222-25.) Mr. Kryder testified about his communications with Todd and Braddock related to a loan renewal. (*Id.* at 226-32.) Mr. Kryder had authorization to work with Braddock on Todd's financial matters, and he viewed the two as "interchangeable." (*Id.* at 233.)

Mr. Kryder testified about receiving a personal financial statement ("PFS") in June 2009 that looked the same as one received in December 2008. (*Id.* at 227.) He testified that information like a PFS was critical to whether his bank would approve loans or how they would structure the financing. (*Id.* at 226.) He testified that, if he learned a borrower was insolvent, it would alter how the bank managed the relationship and deal going forward. (*Id.* at 229.) He said it also would influence Midtown's decision to renew certain loans. (*Id.* at 232.)

*James Askew*

James Askew was the President at United Community Bank, the bank referenced in Count 4, when the bank had an outstanding loan to Todd. (Doc. 279 at 150-67.) Mr. Askew typically communicated with Braddock about Todd's financial matters. (*Id.* at 153.) Mr. Askew testified about Braddock sending him a false PFS related to a loan renewal in 2009. (*Id.* at 154-159.) Mr. Askew testified that receiving accurate information from borrowers was "pretty important" to the bank when assessing risk and deciding whether to approve a loan. (*Id.* at 154.) He testified that the bank might set up a foreclosure or initiate a lawsuit if it learned that Todd was insolvent. (*Id.* at 167.) Mr. Askew's only

testimony related to Julie was about an email to Todd from a commercial lender at the bank indicating that he had asked Julie for additional information for underwriting to renew a loan for her office. (*Id.* at 163-65.) There was no testimony she ever responded to the email or that she provided false information related to that loan. (*Id.*)

*Uncharged Banks*

The government offered no similar witnesses from the banks charged in Counts 3 (GulfSouth Private Bank), 5 (RBC Bank USA), and 6 (Wells Fargo). But it did offer testimony from two bankers who worked at banks that were *not* identified in the substantive counts.

Simone Flack was the former VP of Private Executive Banking at Buckhead Community Bank. (Doc. 276 at 214-15.) This bank is not one identified in a substantive count. (*See* Doc. 130 at 10.) Her bank had extended a loan to Todd for a real estate purchase. (Doc. 276 at 223-24.) As was common with all bank witnesses, Flack dealt primarily with Braddock when she needed documents or information related to Todd's finances. (Doc. 276 at 220.) Her testimony focused on her attempts to obtain PFSs from Todd when he fell behind on payments. (Doc. 276 at 234-35, 239.) Ms. Flack further testified that the requested documents,

including the PFSs, were important in the loan approval process at her bank to keep the debt-to-income ratio below thirty percent. (*Id.* at 228-29.) And updated PFSs had to be provided to her bank periodically after the approval of a loan "to bring [the bank's] file up to speed." (*Id.* at 234-35.) Ms. Flack confirmed she never had any communication with Julie. (*Id.* at 244.)

The government offered similar testimony from Steven Crowell, who worked for Embassy National Bank. (*Id.* at 249.) This bank also was not identified in any of the substantive bank fraud counts. (*See* Doc. 130 at 10.) Mr. Crowell testified about obtaining PFSs from Todd related to a loan renewal. (Doc. 276 at 255-58.) He testified that he would have wanted to know if certain representations were not true, (*Id.* at 259-60), and that PFSs were needed for a loan renewal "for the bank examiners, for loan committees, whatever, that type of thing." (*Id.* at 258.) Mr. Crowell had no interactions with Julie. (*Id.* at 276.)

*Mark Braddock*

With no witnesses from the banks charged as victims in Counts 3, 5, and 6, the government relied exclusively on the testimony of Mark Braddock. Braddock, who had a falling out with the Chrisleys years

11

before the charges were brought, testified that he helped the Chrisleys defraud banks. (*See* Doc. 277 at 111-13.) He provided this testimony pursuant to an immunity deal. (*Id.* at 113-16.)

Related specifically to Count 3, Braddock testified that he emailed a PFS that showed inflated assets to a GulfSouth employee on behalf of Todd. (Doc. 277 at 271-72.) Relevant to Count 6, Braddock sent the same PFS to Wells Fargo. (Gov. Ex. 806.) For Count 5, Braddock emailed a false audited financial statement for Chrisley Asset Management to RBC Bank. (Doc. 278 at 255-56.) On this one, Braddock testified that he did so because it "gave the appearance that the company was being audited regularly by a CPA." (*Id.* at 256.)

Braddock's testimony about Julie was sparse. He said that Julie was "involved" in committing fraud. (Doc. 277 at 133.) When asked specifically if she was aware of the type of documents that were going to the banks, he admitted he did not directly send any of the documents to her and that he would be guessing if he said she had seen them. (*Id.* at 162-63.) He testified only that he had discussed with her whether certain documents looked real or not and the need to keep projecting a positive financial picture so Todd could keep getting loans. (*Id.* at 162-63, 206-07.)

He did not testify about what these documents were, who they were sent to (if anyone), or when these conversations supposedly happened. (*Id*.)

While he did not implicate Julie in the substantive bank frauds, Braddock did testify about other bad acts that he claimed Julie was involved in. He claimed that he and the Chrisleys used the term "scrapbooking" to describe creating false documents. (Doc. 277 at 198-99.) He said that Julie complimented him on how well he could "scrapbook" and told him that, when she tried to do it, it didn't line up and didn't make sense. (*Id*.) He did not testify that she engaged in any "scrapbooking" related to the substantive bank fraud counts, and he did not testify about when any of this occurred. (*See id*.)

In addition, Braddock testified that in 2012—*after* the dates of the substantive bank fraud charges, Julie emailed a scanned image of a check and bank statement to Todd and Braddock, explaining that the "post date is the only thing that needed to be changed." (Gov. Ex. 890.) Braddock testified that this change was made to make it look like the check cleared a few days after it was written, and that the check was ultimately sent to Supreme Lending. (Doc. 277 at 204-06.)

*404(b) Witnesses*

Finally, the government called a series of 404(b) witnesses to testify about bad acts that Julie Chrisley was allegedly involved in. These witnesses testified about false documents sent to third parties—not banks. For example, Cynthia Pararo testified about an allegedly fake invoice from a company called Pineapple House in 2014. (Doc. 277 at 92.) Susan Bozeman was an interior designer who testified about an allegedly fake invoice from her to the Chrisleys. (*Id.* at 93, 96-97.) Dustin McClendon testified that a 2014 invoice purportedly from his carpet-cleaning company appeared inconsistent with his other invoices but explained that it might be authentic because it would have been the first invoice he ever created and he believed the Chrisleys paid him the stated amount. (Doc. 279 at 241-62.) The government also called Kenneth Knight, who testified about a false invoice for furniture repair purportedly done by Knight's company that Julie emailed to a third party in 2015. (*Id.* at 267-279.)

At the close of trial, the jury convicted Julie on all counts. (Doc. 228.)

### 3. Sentencing and Forfeiture

At the sentencing hearing, FBI Special Agent Steve Ryskoski was asked to identify Julie Chrisley's first act in furtherance of the conspiracy. (Doc. 363 at 76.) He could not do it. He referenced Braddock's general testimony that Julie was involved in the submission of false documents. (*Id*. at 76.) When pressed on the first act that Julie did in furtherance of the conspiracy, Agent Ryskoski testified that "there were times where she had to continue to make payments on all of these loans[,]" referring to Julie making payments on the loans (*Id*. at 77.) He admitted this was not illegal but simply showed that she was aware of the loans. (*Id*.) He then said there were more acts "later," but he could not confirm whether any of these purported acts preceded 2012. (*Id*. at 77.) Agent Ryskoski eventually conceded he could point to no act. (*Id*. at 78.)

After testimony but before the court rendered its sentence, defense counsel asked the trial court if it was going to make "a specific finding as to when [Julie] joined the conspiracy[.]" (Doc. 363 at 175.) The court said it would not. (*Id*.) Without further inquiry or explanation, the court held

Julie responsible for the entire loss amount of the conspiracy. (*Id*. at 108-11, 174.)

As to restitution and forfeiture, the government argued that the appropriate restitution number was its proposed actual loss number of about $17.2 million. (Doc. 363 at 63.) The court stated it would take the restitution determination for both the Chrisleys under advisement and asked the government to either "submit something" or notify the court of the need for a restitution hearing "within the next couple of months." (*Id*. at 113-14, 115-16.)

The district court then heard arguments on the various objections to sentencing enhancements and sentencing factors. (*Id*. at 117-218.) When it came time to render a sentence, without further discussion and without ever hearing argument from defense counsel on restitution, the court abruptly accepted the government's proposed actual loss calculation of just over $17.2 million in restitution. (Doc. 363 at 219-20.) The court noted that defense counsel could file a motion to amend its restitution order. (*Id*. at 20.)

At the same time, using the improperly high Guidelines Range associated with the incorrect loss amount, the court sentenced Julie to 84 months followed by three years of supervised release. (Doc. 363 at 227.)

At the end of the sentencing hearing, the government asked the court to put off its forfeiture determination for a later date, and the court agreed. (Doc. 363 at 234.) Without setting any further hearing on forfeiture, however, the district court filed a forfeiture order of $17,270,741.57 on the same day it filed the judgment and commitment forms. (Doc. 347.) Its forfeiture ruling did not explain how it arrived at this number, why it did not allow defense counsel to be heard on the forfeiture issues before it made its ruling, or why it had rejected the arguments in Defendants' motion on these issues. (Doc. 316.)

## D. Standard of Review

On appeal, this Court reviews the sufficiency of the evidence on the bank fraud counts "*de novo*, taking the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict." *United States v. Duenas*, 891 F.3d 1330, 1333 (11th Cir. 2018). But a jury can only infer facts reasonably supported by the evidence; it may not resort to "mere speculation." *Id.* at 1334.

Moreover, this Court "review[s] *de novo* the interpretation and application of the Guidelines," *United States v. Rogers*, 989 F.3d 1255, 1261 (11th Cir. 2021), including the district court's failure to make particularized findings to support a sentencing enhancement, *see United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003).

This Court reviews the sentencing court's determination of restitution value for abuse of discretion. *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007). It reviews the district court's legal conclusions regarding forfeiture *de novo*, and its findings of fact for clear error. *United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003).

## E. Defendant's Bail Status

Julie Chrisley is currently incarcerated pending this appeal.

18

## SUMMARY OF THE ARGUMENT

1.     The government offered no evidence that Julie Chrisley participated in any of the bank frauds specifically alleged in Counts 2 through 6. At trial, the government offered no evidence that she made any material misrepresentation to any of the listed banks as part of any fraudulent scheme. It presented no evidence that she sent any communication to those banks or that she intended to deprive any of those banks of their property. In addition, any evidence that she joined a conspiracy to defraud banks came from 2012—two years *after* the last of the specific bank frauds allegedly occurred. Because the trial record does not connect Julie to any of the banks charged as victims in Counts 2 through 6, let alone to a fraudulent scheme involving them on the dates charged, no reasonable jury could convict her of bank fraud. As a result, her convictions for bank fraud in Counts 2 through 6 should be reversed.

The government also failed to meet its evidentiary burden to convict on Counts 3, 5, and 6 because it failed to produce sufficient evidence that the alleged misrepresentations were material to the victim financial institutions. The government called no one associated with these banks as witnesses at trial. And it offered no testimony about lending practices

in the industry sufficient to allow a reasonable juror to find beyond a reasonable doubt that the alleged misrepresentations were material to any bank transaction, none of which was detailed either.

2.    The trial court committed procedural error at sentencing by failing to make any particularized finding regarding the loss amount attributable to Julie's conduct before holding her accountable for the loss caused by the entire conspiracy. To properly determine a defendant's liability for the acts of others under the Sentencing Guidelines, the district court must first make an individualized finding concerning the scope of criminal activity undertaken by that defendant. Here, the district court did not do so, despite a specific request from defense counsel that the court conduct the inquiry and make the required findings.

This error was not harmless. The evidence at trial and sentencing about Julie's role in the bank fraud conspiracy was minimal, and she objected at sentencing to any suggestion that she was responsible for the entire amount. Instead of addressing these arguments and taking the necessary time to make the required factual determinations, the district court simply assumed that Julie was responsible for as much of the loss attributable to the conspiracy as anyone else. This was error. Remand is

necessary for a renewed sentencing hearing for the district court to consider these arguments and make the necessary factual rulings.

3.     Finally, the district court committed further procedural error related to sentencing by ordering restitution and forfeiture without explaining the basis for its decisions or providing Defendants with an opportunity to be heard. Because the court failed to explain the legal and factual basis for its decisions on these issues, there is no way to know whether the court considered the Defendants' arguments for a lower amount or made legal and factual errors when arriving at the numbers that it did. Remand is necessary for the district court to hold a hearing on this matter, permit argument on it, and issue a reasoned decision that the Defendants can review and—if that decision is flawed—appeal.

## ARGUMENT

## I.    THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO CONVICT ON BANK FRAUD.

A Rule 29 determination focuses on both the elements of the offense charged and on the factual sufficiency of the evidence presented at trial. *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999). Although courts view the evidence in the light most favorable to the prosecution, a conviction can be sustained only where the evidence presented at trial is "substantial." *Glasser v. United States*, 315 U.S. 60, 80 (1942). "Substantial evidence" is evidence that a reasonable juror would accept as adequate and sufficient to support a finding of the defendant's guilt, on all elements of a charged crime, beyond a reasonable doubt. A jury can only infer facts reasonably supported by the evidence; it may not resort to speculation or make logical leaps. *Duenas*, 891 F.3d at 1334.

### A.    The Government Failed to Prove that Julie Committed the Bank Fraud in Counts 2 to 6.

To convict a defendant of bank fraud under 18 U.S.C. § 1344(2), the government must prove beyond a reasonable doubt that: (1) a scheme existed to obtain money, funds, or credit in the custody of a federally-insured financial institution; (2) the defendant participated in the

scheme by means of false pretenses, representations, or promises; (3) the defendant's false representations were material; and (4) the defendant acted knowingly. *United States v. Dennis*, 237 F.3d 1295, 1303 (11th Cir. 2001).

The government failed to offer sufficient evidence to meet *any* of these elements as to Julie for Counts 2 through 6. It offered no evidence that Julie ever made any false statements to the banks specifically named in these counts, intended to deprive those banks of their property, or otherwise participated in any scheme to defraud any of these banks. Nor did it offer evidence that she directed anyone to do so.

With no evidence that Julie was directly involved in the substantive offenses, the government is left to argue that the offenses were in furtherance of a conspiracy that Julie had joined. But that does not help the government here. To be sure, defendants can be convicted of substantive offenses based upon acts committed by a co-conspirator in furtherance of the conspiracy. *United States v. Tilton*, 610 F.2d 302, 309 (5th Cir. 1980) (citing *Pinkerton v. United States*, 328 U.S. 640 (1946); (citations omitted)). But the acts must fall within the scope of the conspiracy that the defendant joined, occur when she was a part of it, and

reasonably be foreseen as a necessary or natural consequence of the unlawful agreement made by the defendant. *Id*.

The government offered no evidence that Julie had joined the conspiracy to defraud banks in 2009 and 2010 when the substantive offenses occurred. Braddock's vague testimony that Julie was "involved" in committing frauds does not specify when she was involved. (Doc. 277 at 133.) There was no testimony that she was involved in any scheme in 2009 or 2010 or took steps to further any scheme during that time. Braddock did offer testimony, however, that Julie was directly involved in sending false information to a bank in 2012. (*Id*. at 204-06.) While this testimony might have been sufficient to convict Julie on the conspiracy count (Count 1), it says nothing about whether she was a conspirator at the time of the substantive bank fraud counts.

Because the government's only evidence of Julie conspiring to defraud a bank happened two years after the substantive offenses, the government failed to prove that the substantive counts were in furtherance of any conspiracy she had joined. Nor can the substantive offenses be a foreseeable or natural consequence of a conspiracy that she had not yet joined.

The government's convictions on these counts are not saved by Braddock's vague testimony that Julie was generally aware of the type of documents being sent to banks or that she was "involved" in fraud. No one, including Braddock, testified that she was involved in the conspiracy in 2009 and 2010. And it would be improper speculation for a jury to assume his testimony applied to that period of time. *Cf. Duenas*, 891 F.3d at 1334.

With no evidence tying Julie to any of the substantive bank fraud charges alleged in Counts 2 through 6, no reasonable jury could have found her guilty beyond a reasonable doubt. And because the government failed to offer sufficient evidence that Julie was part of the bank fraud conspiracy in 2009 and 2010, it cannot rely on *Pinkerton* liability to sustain the convictions on the substantive bank fraud counts. The Court must therefore acquit her of these charges.

**B.    The Government Failed to Prove a Material Misrepresentation for Counts 3, 5, and 6.**

There are further evidentiary problems with three of the five substantive bank fraud counts. For Counts 3, 5, and 6, which charged fraud against GulfSouth Private Bank, RBC Bank USA, and Wells Fargo, respectively, the government failed to offer sufficient evidence of a

material misrepresentation. Accordingly, the Court should reverse these three convictions.

The bank fraud statute requires that the jury find that the alleged misrepresentations were material in determining whether to issue a loan or extend credit. *Neder v. United States*, 527 U.S. 1, 22, 25 (1999) (finding that "the well-settled meaning of 'fraud' require[s] a misrepresentation or concealment of material fact," and that well-settled meaning of incorporated into the bank fraud statute as an element of the offense.) This materiality element requires that any false representation be directed at the alleged victim and tend to influence the victim's actions. *Id.*; *Kungys v. United States*, 485 U.S. 759, 770 (1988) ("natural tendency to influence"); *see also United States v. Gaudin*, 515 U.S. 506, 509 (1993); *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) ("A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed.").

The Supreme Court has explicitly emphasized materiality as an element of fraud, explaining that courts must be "careful not to set too low a standard of materiality," *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988), and that to do otherwise would threaten to make a "surprisingly

broad range of unremarkable conduct a violation of federal law." *Williams v. United States*, 458 U.S. 279, 287 (1982).

Not all misrepresentations are material because "[a] person of ordinary prudence would not rely on all misrepresentations." *United States v. Hassan*, 333 F.3d 1264, 1271 (11th Cir. 2003). The materiality of an alleged misrepresentation instead depends on the context in which it occurred. *See Neder*, 527 U.S. at 16 (defining materiality in the federal crime-fraud context as a natural tendency to influence the choices of an alleged victim); *see also United States v. Svete*, 556 F.3d 1157, 1164 (11th Cir. 2009). No statement is material in the abstract, and the materiality analysis is a victim-centric one that considers all relevant circumstances. *Neder*, 527 U.S. at 22.

For instance, in *United States v. Hassan*, the Eleventh Circuit noted that alleged misrepresentations amounting to "[p]uffery" are never material because a reasonable person would not rely on them. 333 F.3d at 1271. The Court's example of immaterial puffery was misrepresentations about a property's market value. *Id*. A reasonable person, the Court concluded, would not "rely on the [defendant's] representations regarding the market value of [] property when the

market value can be, and should be, easily verified by consulting other sources." 333 F.3d at 1271; *see also United States v. Parker*, 839 F.2d 1473, 1480-81 (11th Cir. 1988) (reversing fraud conviction where "loose," but not "wholly unfounded" descriptions may have deceived some customers); *cf. Blount Fin. Servs. v. Walter E. Heller & Co.*, 819 F.2d 151, 153 (6th Cir. 1987) (no scheme to defraud because reliance on statement unreasonable where matter represented could have been "verified . . . independently").

Against the backdrop of those principles, in determining whether a reasonable jury could convict a defendant for bank fraud, federal courts of appeal uniformly require testimony establishing that the victim bank or the banking industry as a whole would consider the defendant's alleged misrepresentations to be material. *See, e.g., United States v. Prieto*, 812 F.3d 6, 14 (1st Cir. 2016) (relying on testimony from a "mortgage broker with a decade of experience in the [banking and lending] industry"); *United States v. Vernon*, 593 Fed. Appx. 883, 889 (11th Cir. 2014) (same); *United States v. Perez-Ceballos*, 907 F.3d 863, 868 (5th Cir. 2018) (holding the evidence at trial insufficient to support a bank fraud conviction first because "[n]o Chase Bank witness testified at

trial"); *United States v. Lindsey*, 850 F.3d 1009, 1015-16 (9th Cir. 2017);

*United States v. Raza*, 876 F.3d 604, 619-21 (4th Cir. 2017).

Failure to offer such evidence results in reversal. In *United States v. Perez-Ceballos*, for example, the Fifth Circuit reversed a defendant's conviction for bank fraud. 907 F.3d at 867. In that case, the government presented no testimony from any employee of the victim bank. *Id.* at 868. Instead, the government called only witnesses who were not bank employees, and those witnesses offered only "generalized observations about banking industry regulations." *Id.* at 868-69. That testimony amounted only to "speculative" inferences about the alleged misrepresentations the defendant made to the bank and therefore provided "no basis" for upholding the fraud convictions. *Id.* at 869.

This Court recently cited *Perez-Ceballos* to reiterate the importance of bank employee testimony in bank fraud cases. In *United States v. Greene*, the defendant argued that there was insufficient evidence to support his bank fraud conviction, citing *Perez-Ceballos*. 842 F. App'x 364, 369 (11th Cir. 2021). In rejecting that argument, this Court nonetheless emphasized that, in *Perez-Ceballos*, "no one from [the victim] bank testified at trial." 842 Fed. Appx. at 371 (citation omitted). By

contrast, in *Greene*, the government elicited testimony at trial from a "senior employee" of the victim bank. *Id*. That employee testified about the three specific transactions underlying the three bank fraud counts and testified about how the defendant's misrepresentations to the bank affected the loan amounts the bank approved. *Id*. That testimony was sufficient for the Court in *Greene* to affirm the defendant's bank-fraud convictions. *Id*. There was no such evidence here for Counts 3, 5, and 6.

At trial, the government only offered testimony from executives from Midtown Bank and United Community Bank. Robert Kryder, who was employed at Midtown Bank during the relevant period of time, testified that, if the bank knew Todd's assets were much lower than reported, it would have changed how the bank dealt with Todd's outstanding loan and possibly affected whether it would renew the loan. (Doc. 279 at 225-26, 229.) The government offered similar testimony from United Community Bank Division President James Askew. (*Id*. at 166-67) But the testimony of these two witnesses only applies to the misrepresentations to their banks, which correspond to Counts Two and Four.

The government offered no similar witness for the remaining substantive counts. The only evidence the government offered about any representations supposedly made to GulfSouth Private Bank (Count 3), RBC Bank USA (Count Five), or Wells Fargo (Count Six) was that Braddock sent allegedly fraudulent documents to them. It offered no evidence beyond this—and specifically no testimony from any bank employee that the document was received or relied on in any way, much less that it was material to a decision to renew a loan or extend credit. There was not even any evidence that the Chrisleys filled out a loan or credit application for any of these banks.

Moreover, even if the government had offered evidence that the banks received these statements as part of a loan application, this sparse evidence still would be insufficient evidence of fraud. *See United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007) ("The simple fact that the Co-Borrowing Agreements required information does not make any misstatements of that information per se material."); *Universal Health Servs, Inc. v. United States*, 579 U.S. 176, 190, 194-95 (2016) (rejecting the conclusion that information is material simply because the government designated it as a condition of payment).

This is because, as discussed above, materiality is not presumed simply because false information is collected. Consistent with its burden on all other elements of the crime, the government must put on substantial evidence to establish materiality. Here, because the government offered no proof of materiality, the jury could not have found beyond a reasonable doubt that any alleged misrepresentation was material. The simple fact that a representation is false does not render it material. *See, e.g., Hasson*, 333 F.3d at 1271 (explaining that not all false statements are material). For these three counts, the government only offered evidence about the falsity of the representations—not the materiality. It must offer sufficient evidence of both.

As a result, no reasonable juror could have found the necessary elements to convict on Counts 3, 5, or 6, and this Court should order the entry of judgments of acquittal.

## II.   THE COURT ERRED AT SENTENCING BY REFUSING TO MAKE INDIVIDUALIZED FINDINGS ABOUT JULIE'S ROLE IN THE BANK FRAUD CONSPIRACY.

The limits of sentencing accountability are not coextensive with the scope of criminal liability. U.S.S.G. § 1B1.3, cmt. (n. 1). A defendant is accountable for the conduct of others that was both: "(1) in furtherance of

the jointly undertaken criminal activity; and (2) reasonably foreseeable in connection with that criminal activity." *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir. 2003) (citing U.S.S.G. § 1B1.3, cmt. (n. 2). The Application Note further explains:

> In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement).

*Id.*

Accordingly, "to determine a defendant's liability for the acts of others [for purposes of the Guidelines], the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." *Hunter*, 323 F.3d at 1319 (citations omitted). "Only after the district court makes individualized findings concerning the scope of criminal activity the defendant undertook is the court to determine reasonable foreseeability." *Id.*

Here, the trial court failed to make these required determinations before holding Julie accountable for the entire financial loss caused by all co-conspirators at any given time. This was error, as "the Guidelines establish that the fact that [a] defendant knows about the larger

33

operation, and has agreed to perform a particular act, does not amount to acquiescence in the acts of the criminal enterprise as a whole." *Id.* Even more basic, "[a] defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct[.]" U.S.S.G. § 1B1.3, cmt. (n. 2). And a defendant's "mere awareness that [a co-conspirator] was involved in a much larger scheme is not enough to hold them accountable for the activities of the entire conspiracy." *Hunter*, 323 F.3d at 1321 (citing *United States v. Studley*, 47 F.3d 569, 575 (2d Cir. 1995)).

The district court addressed none of these issues. When asked specifically if it intended to make a particularized finding about when Julie joined the conspiracy or the scope of her participation, the trial court refused. (Doc. 363 at 175.) This was error. And it was not harmless. There was no basis in the record to support the huge loss amount attributed to Julie, and the difference between the very large Offense Level the court calculated and the much lower Offense Level that would have resulted from a proper, particularized determination of Julie's role in the conspiracy affected the resulting sentencing guidelines range. As a result, this Court should vacate Julie's sentence and remand for

resentencing in the manner required by the Sentencing Guidelines and this Court's cases.

## III. THE COURT ERRED AT SENTENCING BY FAILING TO EXPLAIN ITS REASONS FOR IMPOSING LARGE AMOUNTS OF RESTITUTION AND FORFEITURE.

The district court committed further procedural error at sentencing by ordering restitution and forfeiture without explaining its reasons, making specific factual determinations, and allowing Defendants an opportunity to be heard.

Specifically, the trial court made no particularized findings to explain how it arrived at its calculations. As this Court has explained, a "district court must explain its findings with sufficient clarity to enable this court to adequately perform its function of appellate review. *United States v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010) (citing *See United States v. Gupta,* 572 F.3d 878, 890–91 (11th Cir.2009) (remanding for district court to determine the amount of restitution owed); *accord United States v. McAlpine,* 32 F.3d 484, 490–91 (10th Cir.1994) (vacating restitution order and remanding for district court to make specific factual findings because record did not indicate how district court arrived at the specific restitution figure such that the reviewing

court "was unable to effectively review the court's findings, and [was] unable to determine if the findings represent the victims' losses").

Here, the trial court rushed to a determination on restitution and forfeiture without addressing the Defendants' objections. And because the court did not provide its reasons, this Court can only speculate as to them. It appears, perhaps, that the district court ordered restitution based on a calculation of intended loss rather than actual loss. If this is true, the court erred in doing so. A restitution award "must be based on the amount of loss *actually* caused by the defendant's conduct." *United States v. Liss,* 265 F.3d 1220, 1231 (11th Cir.2001) (emphasis added).

The court likewise erred by failing to explain its findings supporting its forfeiture calculation and issuing the forfeiture order without providing defense counsel an opportunity to be heard—after telling the parties it would take up the matter with them later. This was error. As a result, this Court should vacate the restitution and forfeiture orders and remand for a full hearing on both issues.

36

## CONCLUSION

For all these reasons, this Court should enter judgments of acquittal on Counts 2 through 6, vacate the Defendant's sentence, including the awards of restitution and order of forfeiture, and remand for a new sentencing hearing.

Respectfully submitted,

By: _____

J. ALEX LITTLE (TN BPR # 029858)
ZACK C. LAWSON (TN BPR # 036092)
Burr & Forman LLP
222 2nd Ave S, Suite 2000
Nashville, TN 37201
Telephone: 615-724-3203
Facsimile: 615-724-3303
Email: alex.little@burr.com

Christopher S. Anulewicz (GA Bar #020914)
Balch & Bingham LLP
30 Ivan Allen, Jr. Blvd, N.W., Suite 700
Atlanta, Georgia 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

*Attorneys for Julie Chrisley*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME,
TYPEFACE, AND STYLE REQUIREMENTS**

This document contains complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because it contains 6,884 words according to the Microsoft Word word processing program, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface, Century Schoolbook, at a font-size of 14.

By: _____

J. ALEX LITTLE
*Counsel for Appellant*

Dated: March 29, 2023

38

## CERTIFICATE OF SERVICE

I hereby certify that I served this brief on all counsel of record through the Court's CM/ECF system on March 29, 2023.

By: _____

J. ALEX LITTLE
*Counsel for Appellant*